|   |   |
|---|---|
| 1 |   |
| 2 |   |
| 3 |   |
| 4 |   |
| 5 |   |
| 6 | IN THE UNITED STATES DISTRICT COURT |
| 7 | FOR THE EASTERN DISTRICT OF CALIFORNIA |

TRUITT MOORE,

        Petitioner,                      No. 2:09-cv-2737-JFM (HC)

    vs.

MIKE EVANS, *Warden*,

        Respondent.                   <u>ORDER</u>

_____/

Petitioner is a state prisoner proceeding in propria persona with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In March 2007, petitioner was convicted on charges of possession of methamphetamine for sale (Cal. Health & Saf. Code §11378 (count 1)); possession of methamphetamine with a firearm (Cal. Health & Saf. Code § 11370.1, subd. (a) (count 2)); possession of a firearm by a convicted felon (Cal. Penal Code § 12021, subd. (a)(1) (count 3)); and possession of an injecting or smoking device (Cal. Health & Saf. Code § 11364, subd. (a) (count 4)). In April 2007, petitioner pled guilty to possession of methamphetamine (Cal. Health & Saf. Code, § 11377; count 1) and possession of a hypodermic needle or syringe (Cal. Bus. & Prof. Code § 4140; count 3). Petitioner was subsequently sentenced in both cases to a term of fourteen years, four months.

Petitioner raises two claims in his petition filed October 1, 2009: (1) the trial court erred in denying a motion brought by petitioner pursuant to <u>People v. Marsden</u>, 2 Cal.3d 118 (1970), and (2) his prison sentence violates the Fifth, Sixth and Fourteenth Amendments.

1

FACTS[1]

*Case No. 05F06431*

In August 2005, law enforcement officers from a joint task force conducted a warrant search at the Shasta County residence of Pattye Galba. [Petitioner] and Galba were found asleep in an upstairs bedroom. A pat-down search of [petitioner] yielded a needle syringe in his right front pocket. A search of the bedroom yielded six new syringes inside a pocket of a man's flannel shirt. The shirt was hanging in an area above a dresser approximately four feet from the bed. The shirt appeared to be consistent with [petitioner]'s size and build. He was the only man found in the bedroom. Galba, the female found at that location, was smaller in stature than [petitioner].

Next to the bed, approximately three feet away, officers located a black bag. Inside the bag were four separate quantities of methamphetamine, three of which were in separate baggies. The other quantity of methamphetamine was a large shard. Two of the quantities were analyzed; one weighed 3.92 grams, and the other weighed 0.66 grams. Also in the bag were two wallets containing $994 in U.S. currency. Documents identifying [petitioner] were located in both wallets. These included a Blockbuster ID card with [petitioner]'s name printed on it and a handwritten receipt on a preprinted form made out to [petitioner].

A second black bag, located about three feet from [petitioner], contained indicia in the name of a woman, several baggies, a cellular telephone, hydrocodone pills, marijuana, pay-owe sheets, plastic containers with white residue, and two digital scales with methamphetamine residue.

Officers located a .380 caliber semi-automatic handgun on a dresser approximately five feet from the bed. The handgun was functional and contained a magazine with five unexpended rounds. [Petitioner] admitted that the handgun belonged to him.

Also on the dresser in the bedroom was a functional radio scanner capable of monitoring law enforcement communications. A third digital scale with white residue was found underneath the mattress in the bedroom.

Based on the scales, the scanner, the amount of U.S. currency, the packaging, the pay-owe sheets, and the quantities of methamphetamine, two members of the search team opined that [petitioner] and Galba possessed the methamphetamine for the purpose of sale.

*Case No. 06F10441*[these facts were obtained from the probation officer's report]

/////

---

[1] The statement of facts is taken from the opinion of the California Court of Appeal for the Third Appellate District in <u>People v. Moore</u>, No. C055916 (February 11, 2008), a copy of which was lodged by respondent on December 8, 2009 as Lodgment C.

On an afternoon in November 2006, two Redding police officers were dispatched to a suspicious occupied vehicle parked in front of a residence. Upon arrival, the officers found [petitioner] sleeping in the driver's seat. It took several seconds to awaken him. He was disoriented and groggy, and he had difficulty unlocking the car door. As [petitioner] left the car, an officer observed a baggie of marijuana sticking out of [petitioner]'s jacket pocket. The baggie weighed 7.5 grams. A hypodermic needle containing methamphetamine was found in a jacket pocket. [Petitioner] admitted that he used methamphetamine intravenously and that he had smoked it the previous evening.

(People v. Moore, slip op. at 3-5.)

## PROCEDURAL BACKGROUND

Petitioner timely appealed to the California Court of Appeal, Third Appellate District. The state appellate court affirmed petitioner's conviction and sentence on February 11, 2009. (Lodgment C.)

Petitioner timely petitioned the California Supreme Court for review. Review was denied on April 22, 2009. (Lodgment E.)

On October 1, 2009, petitioner filed a petition for writ of habeas corpus in this court. On December 7, 2009, respondent filed an answer. On December 29, 2009, petitioner filed a traverse. This matter is before the undersigned based on the consent of the parties.

## ANALYSIS

I.  Standards for a Writ of Habeas Corpus

Federal habeas corpus relief is not available for any claim decided on the merits in
state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly

3

established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result. Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Williams, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'") The court looks to the last reasoned state court decision as the basis for the state court judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).

II.   Petitioner's Claim

    A.   The Marsden Motion

Petitioner's first claim is that the trial court erred in denying a motion for new counsel pursuant to People v. Marsden, 2 Cal.3d 118 (1970).

The last reasoned rejection of this claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal:

> [Petitioner] contends the trial court's denial of his post-conviction *Marsden* motion was an abuse of discretion. We are not persuaded.
>
> *Background*
>
> After the jury convicted him on all charges in case No. 05F06431, but before the court trial on his prior conviction allegations, [petitioner] moved for

4

substitution of counsel pursuant to *Marsden*. At the hearing [petitioner] claimed, among other things, that his trial counsel had misadvised him as to his maximum exposure on the two cases. This is the only claim renewed on appeal.

[Petitioner]'s trial counsel responded to the claim of misadvisement as follows: "He [petitioner] was informed quite a long time ago. He's had two attorneys, myself and Mr. Dippery. He was explained [*sic*] a long time ago that the exposure on the first case could be up to 13 years. There was a great exposure. [¶] We went to trial with the understanding that it – in my opinion, it was a long shot to convict on . . . the possession charge with the firearm. And that his exposure, if he didn't get convicted on that, would have just dealt with the possession of the firearm by a felon and with the strike and the one-year prison enhancement, but he was explained [*sic*] his maximum exposure quite a while ago."

In response, this exchange between the court and [petitioner] occurred:

"THE COURT: All right. What did you say, [petitioner], was your understanding of what your maximum sentence was on the first case, the one that we just got done trying?

"[PETITIONER]: Of five years because that I would beat the drugs. Do you understand?

"THE COURT: Well, you may – you may have calculated it based on what your attorneys hoped to have achieved for you, that they would beat the drugs and you would go down on the felon in possession charge and get five years. Is it possible that you misunderstood their – their comments in that way?

"[PETITIONER]: No, because I was told that if I – that six years was not a good deal. That's the whole reason why I went to jury trial was to drop a year. That was it. That was my clear understanding was that there was no way that I could be convicted on the drugs, and then they didn't bring up the fact on page eight. [¶] . . . [P]age eight, it states that Agent Rudd – typed by Agent Rudd, that the purse and the wallet were Galba's, not . . . [petitioner]'s. It states it real clearly. [¶] So, if I had no tie to the money, no tie to the drugs, no tie to this – to any sales, uhmmm, there's no possible way that I could be convicted. I just came to jury trial to lose one year. That was it. I admitted to the gun. I did from the start, and I never tried to deny that.

"THE COURT: No. That was clearly the strategy of [[petitioner]'s trial counsel] in the trial is [*sic*] to acknowledge that he thought the jury would almost certainly conclude from the statement attributed to you by the police officers about the gun, ownership of the gun. I mean, that – that's a reasonable tactical choice of his, apparently one which you believed in, too; might as well admit what I'm pretty much forced to admit and hope they acquit me on the rest of this stuff where the proof is not quite so evident. [¶] . . . [¶] But, uhmm, that's a reasonable trial strategy. I thought it was perhaps the only one he could have adopted which is the one that you both concluded was the – was the way to go; admit the gun because you pretty much had to and dispute the rest of it, and

[petitioner's counsel], I thought, did a pretty nice job. [¶] . . . [¶] There is clearly sufficient evidence, in my view, to support [the jury's] decision, but I understand why you would have gone to trial on a case like this.  And I thought, thinking about the job that [[petitioner]'s trial counsel] did, I was impressed."

[Petitioner]'s trial counsel confirmed that the prosecution had made an offer of six years, and that counsel had recommended taking the case to trial, based on his opinion that the two possession counts – possession for sale and possession with a firearm – were weak because the prosecution would have to show a nexus between [petitioner] and the contraband.

The trial court denied the motion, finding that [petitioner] had not demonstrated that trial counsel's "conduct or work on the case fell below the standard the law holds him to."

*Analysis*

When a defendant seeks to discharge his court-appointed counsel on the basis of inadequate representation, the court must allow defendant to explain the basis of his claim and to relate specific instances of counsel's inadequate representation.  (*People v. Smith* (2003) 30 Cal.4th 581, 604.)  "A defendant is entitled to have appointed counsel discharged upon a showing that counsel is not providing adequate representation or that counsel and defendant have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result."  (*People v. Jones* (2003) 29 Cal.4th 1229, 1244-1245 (*Jones*).)

We review the trial court's decision denying [petitioner]'s *Marsden* motion under the deferential abuse of discretion standard. (*Jones, supra*, 29 Cal.4th 1229, 1245.) "'Denial of the motion is not an abuse of discretion unless the defendant has shown that a failure to replace the appointed attorney would "substantially impair" the defendant's right to assistance of counsel.' [Citations.]" (*People v. Hart* (1999) 20 Cal.4th 546, 603.)

In this case, [petitioner]'s *Marsden* motion alleged that his trial counsel was not providing adequate representation. (*Jones, supra*, 29 Cal.4th at pp. 1244-1245.) The record shows that the trial court allowed [petitioner] to fully explain his concerns. [Petitioner] claims the trial court erred by failing to "follow up or ascertain more specifics from [defense counsel] regarding his advice to [petitioner] 'a long time ago' or what advice he gave him with regards to rejecting the six-year plea bargain." Neither claim has merit.

Trial counsel stated that [petitioner] had been informed "quite a long time ago" that his maximum exposure was "up to 13 years." In response, [petitioner] did not dispute that he had been so advised. Rather, when the court asked [petitioner] for his understanding of his "maximum sentence ... on the first case," [petitioner] answered, "five years *because that I would beat the drugs*. Do you understand?" (Italics added.) [Petitioner]'s answer made plain that his "understanding" of his "maximum sentence" was not the maximum allowed by statute, but the maximum that he expected to obtain at trial.FN6  The trial court correctly perceived that [petitioner]'s dispute was not related to the statutory maximum sentence he had been advised of long ago; the court's failure to obtain

> "more specifics" regarding trial counsel's advisement of the statutory maximum was neither error nor an abuse of discretion.
>
> FN6. Contrary to [petitioner]'s argument, there is no "contradict[ion]" between trial counsel's understanding of the statutory maximum exposure (13 years) and [petitioner]'s understanding of the maximum sentence he would receive at trial (five years). We reject [petitioner]'s claim that trial counsel's advisement regarding [petitioner]'s exposure was "wishful thinking."
>
>    [Petitioner] next claims the trial court erred by failing to follow up with trial counsel as to "what advice he gave him with regards to rejecting the six-year plea bargain." However, at a subsequent point in the hearing, trial counsel confirmed that the prosecution had made an offer of six years, and that counsel had recommended taking the case to trial, based on his opinion that the two possession counts-possession for sale and possession with a firearm-were weak because the prosecution would have to show a nexus between [petitioner] and the contraband. This explanation tracked [petitioner]'s stated understanding. He does not contend a further inquiry would have yielded additional relevant information.
>
>    In sum, [petitioner] has not shown that failure to replace his trial counsel would substantially impair his right to the assistance of counsel. Denial of the *Marsden* motion was not an abuse of discretion. (*People v. Hart, supra*, 20 Cal.4th at p. 603.)

(People v. Moore, slip op. at 8-11.)

"[I]n evaluating Sixth Amendment claims, 'the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such.'" Wheat v. United States, 486 U.S. 153, 159 (1988) (quoting United States v. Cronic, 466 U.S. 648, 657 n.21 (1984)). "[T]he essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant." Wheat, 486 U.S. at 159. In considering whether habeas relief should issue based on the denial of a Marsden motion, the court looks at whether petitioner's conflict with his attorney deprived him "of the representation to which he was entitled by the Sixth Amendment." Schell v. Witek, 218 F.3d 1017, 1027 (9th Cir. 2000). The court considers "a number of factors, including the timeliness of the motion, the adequacy of the court's inquiry into the [petitioner]'s complaint, and whether the conflict between the [petitioner] and his counsel was so great that it resulted in a total lack of communication preventing an adequate defense." Hudson v. Rushen, 686 F.2d 826, 829 (9th Cir. 1982). Citing the holding in Morris v. Slappy, 461 U.S. 1, 13-14 (1983), "that there is no Sixth Amendment right to 'a "meaningful

relationship" between and accused and his counsel,'" the Ninth Circuit has noted that it is unaware of any decision by the United States Supreme Court "that stands for the proposition that the Sixth Amendment is violated when a defendant is represented by a lawyer free of actual conflicts of interest, but with whom the defendant refuses to cooperate because of dislike or distrust" and that Morris "is to the contrary." Plumlee v. Masto, 512 F.3d 1204, 1210-11 (9th Cir. 2008).

After review of the record, this court finds the state appellate court's findings to be fully supported by the record and its denial of this claim is congruent with applicable principles of federal law. Petitioner's first claim for relief will be denied.

B.   Sentencing Error

Next, petitioner argues that the trial court violated his Fifth, Sixth and Fourteenth Amendment rights when it sentenced him to upper terms.

The appellate court set forth the factual background concerning this claim as follows:

> In March 2007, in case No. 05F6431, a jury convicted [petitioner] of possession of methamphetamine for sale, in violation of Cal. Health & Saf. Code §11378 (count 1); possession of methamphetamine with a firearm, in violation of Cal. Health & Saf. Code § 11370.1, subd. (a) (count 2); possession of a firearm by a convicted felon, in violation of Cal. Penal Code § 12021, subd. (a)(1) (count 3); and possession of an injecting or smoking device, in violation of Cal. Health & Saf. Code § 11364, subd. (a) (count 4). The jury found that [petitioner] was personally armed with a firearm (§ 12022, subd. (c)) in the commission of count 1. In April 2007, the trial court found that he had suffered a prior strike conviction (§§ 667, subd. (b)-(i), 1170.12) and had served a prior prison term (§ 667.5, subd. (b)).
>
> Also in April 2007, in case No. 06F10441, [petitioner] pled guilty to possession of methamphetamine (Health & Saf. Code, § 11377; count 1) and possession of a hypodermic needle or syringe (Bus. & Prof. Code § 4140; count 3). A count of possession of an injecting or smoking device was dismissed. (Count 2.) Based on its earlier ruling, the court found true a strike allegation and a prior prison term allegation. The court also found true an allegation that
> /////
> [petitioner] committed the offenses while on bail or an [*sic*] own recognizance release. (§ 12022.1.)

(People v. Moore, slip op. at 1-2.)

/////

During a joint sentencing hearing in the two cases, case numbers 05F6431and 06F10441, the trial court imposed the sentence challenged herein as follows:

> THE COURT:  In considering the term to impose, I considered the factors in aggravation and those in mitigation.  Those in mitigation, I found there were none as did the probation department, and that was under Rule 4.423.
>
> I did find several factors in aggravation.  I didn't find – I am not finding that the manner in which this crime was carried out indicated planning, sophistication or professionalism.  So, I'm not using that as a factor in aggravation. I do find that you have – your prior convictions as an adult are numerous.  That's hard to deny.  You were on probation or parole when the crime was committed, and your prior performance or [sic] probation or parole was unsatisfactory.  I found each of those as factors in aggravation, and under prevailing case authority, I believe those are factors that I may properly consider in determining whether to impose the aggravated term.
>
> And in the absence of any factors in mitigation, those in aggravation clearly outweigh, justifying imposition of the aggravated term.
>
> [Prosecutor], you look like you had something you want to say?
>
> [PROSECUTOR]: Yes, sir.  I am personally not aware of the statutory or the case law authority supporting the status on probation and the failure on probation; however, I know that all the language says the only thing the Court can consider is the prior record, and I always read that to mean conviction.
>
> THE COURT: Recidivism?
>
> [PROSECUTOR]: Correct.
>
> THE COURT: Right.
>
> [PROSECUTOR]: So, with my understanding, I would just make a request, if the Court can do so, state whether or not the Court would impose –
>
> THE COURT: Any one.  Any one of these standing alone because there's no – there are no factors in mitigation.  In the absence of mitigation, any of these individually or collectively would have – would have caused me to impose the aggravated term.
>
> [PROSECUTOR]: Thank you.
>
> THE COURT: And so, finding that this is a case deserving of the aggravated term, as to the charge of unlawful possession of a controlled substance for sale, the Court imposes the aggravated term of three years, and under 1170.12 of the Penal Code, that term is hereby doubled for an unstayed term of six years in state prison.

>   On the 11370.1(a), six years is imposed and stayed under 654 of the Penal Code.
>
>   On the 12021(a)(1), I'm going to impose the base term of – or impose the term of four years and stay that pursuant to Penal Code Section 654.
>
>   For the 12022(c) violation, it's the judgment and sentence of this court that [petitioner] be sentenced to a consecutive term of four years in state prison. That is not stayed. That is consecutive. Followed by a consecutive one-year term for the 667.5(b) PC allegation. And I think that concludes sentence on 05F6431.
>
>   Consecutive to the sentence imposed on 05F6431, on case 06F10441, it is the judgment and sentencing of this Court that as to the charge of unlawful possession of a controlled substance, [petitioner] be sentenced to state prison for a term of eight months which is hereby doubled to a term of 16 months under 1170.12.
>
>   For the crime-bail-crime allegation under 12022.1 PC, a consecutive term of two years is hereby imposed and a one-year stayed prison sentence for the 667.5(b) allegation for a total unstayed prison term of 14 years and four months.

(Reporter's Transcript ("RT") at 291-93.)

The last reasoned rejection of petitioner's claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal. The state court rejected this claim on the ground that:

>   [Petitioner] contends his upper term sentence violates *Apprendi*, *Blakely*, and *Cunningham*. We are not persuaded.
>
>   The trial court selected the upper term because "your prior convictions as an adult are numerous. . . . You were on probation or parole when the crime was committed, and your prior performance on probation or parole was unsatisfactory."
>
>   All of these factors may be found by a court without submitting the issues to a jury. (*People v. Towne* (2008) 44 Cal.4th 63, 79; *People v. Black* (2007) 41 Cal.4th 799, 819-820.) [Petitioner]'s contention to the contrary is not meritorious.

(People v. Moore, slip op. at 17.)

A criminal defendant is entitled to a trial by jury and to have every element necessary to sustain his conviction proven by the state beyond a reasonable doubt. U. S. Const. amends. V, VI, XIV. In Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), the United States

10

Supreme Court held that the Due Process Clause of the Fourteenth Amendment requires any fact other than a prior conviction that "increases the penalty for a crime beyond the prescribed statutory maximum" to be "submitted to a jury and proved beyond a reasonable doubt." In Blakely, the United States Supreme Court decided that a defendant in a criminal case is entitled to have a jury determine beyond a reasonable doubt any fact that increases the statutory maximum sentence, unless the fact was admitted by the defendant or was based on a prior conviction. Id., 542 U.S. at 303-04. The Supreme Court also clarified the definition of "statutory maximum" for purposes of the constitutional rule: "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional facts." Id. at 2537. In United States v. Booker, 543 U.S. 220 (2005), the United States Supreme Court applied Blakely to the Federal Sentencing Guidelines. The court clarified that "'the statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Id. at 232. In Cunningham v. California, 549 U.S. 270 (2007), the Supreme Court, citing Apprendi and Blakely, held that California's Determinate Sentencing Law violates a defendant's right to a jury trial to the extent it permits a trial court to impose an upper term based on facts found by the court rather than by a jury. The court determined that "the middle term prescribed in California's statutes, not the upper term, is the relevant statutory maximum." Id. at 288. The Ninth Circuit subsequently held that Cunningham may be applied retroactively on collateral review." Butler v. Curry, 528 F.3d 624, 639 (9th Cir. 2008).

Under California law, the existence of a single aggravating circumstance is legally sufficient to make the defendant eligible for the upper term. Butler v. Curry, 528 F.3d 624, 642 (9th Cir. 2008); People v. Black, 41 Cal.4th 799, 813 (2007); People v. Osband, 13 Cal.4th 622, 728 (1996). That is, only one aggravating factor is necessary to set the upper term as the "statutory maximum" for Apprendi and Blakely purposes as long as it is established in

1  accordance with the constitutional requirements set forth in Blakely.  Black, 41 Cal.4th at 81.
2  While the court may make factual findings with respect to additional aggravating circumstances,
3  these findings, themselves, do not further raise the authorized sentence beyond the upper term.
4  Id.  Furthermore, with respect to a Sixth Amendment sentencing violation, "the relevant question
5  is not what the trial court would have done, but what it legally could have done."  Butler, 528
6  F.3d at 648.  After validly finding one aggravating factor, a trial court could legally impose an
7  upper term sentence.  That the judge might not have imposed an upper term sentence in the
8  absence of additional aggravating factors does not implicate the Sixth Amendment.  Butler, 528
9  F.3d at 649.  Accordingly, petitioner's upper term sentence is not unconstitutional if at least one
10 of the aggravating factors that the judge relied upon in sentencing petitioner was established in a
11 manner consistent with the Sixth Amendment.

12         After review of the record, this court finds the state appellate court's findings to
13 be fully supported by the record and its denial of this claim congruent with applicable principles
14 of federal law.  The probation report provides that petitioner suffered two felony convictions,
15 one of which was construed as a strike by the trial judge, and the judge stated that the imposition
16 of the upper terms was based on petitioner's prior convictions.  (See Clerk's Transcript at 233;
17 RT at 287-89, 291-93.)  Thus, because the trial judge could have legally imposed the upper terms
18 solely for the existence of petitioner's prior convictions, petitioner's upper term sentence is not
19 unconstitutional.  Petitioner's second claim for relief will be denied.

20         For all of the foregoing reasons, petitioner's application for a writ of habeas
21 corpus is denied. Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United
22 States District Courts, "[t]he district court must issue or a deny a certificate of appealability
23 when it enters a final order adverse to the applicant."  Rule 11, 28 U.S.C. foll. § 2254.  A
24 certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a
25 substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The court
26 must either issue a certificate of appealability indicating which issues satisfy the required

1  showing or must state the reasons why such a certificate should not issue.  Fed. R. App. P. 22(b).
2  For the reasons set forth in this order, petitioner has made a substantial showing of the denial of
3  a constitutional right only as to the trial court's denial of petitioner's Marsden motion.
4  Accordingly, a certificate of appealability will issue only as to that claim.
5        Accordingly, IT IS HEREBY ORDERED that
6        1.  Petitioner's application for a writ of habeas corpus is denied; and
7        2.  The court issues a certificate of appealability as to petitioner's claim that the
8  trial court erred in denying his Marsden motion.
9  DATED: October 21, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

/014;moor2737.157